UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BARBARA GIVENS

                          Plaintiff,              11-CV-6592

            v.                                **DECISION AND ORDER**

MONROE COUNTY, and ASSISTANT
COORDINATOR DANIEL PERNA,
INDIVIDUALLY

                          Defendants,
_____

## <u>INTRODUCTION</u>

Plaintiff, Barbara Givens ("Plaintiff"), brings this action pursuant to the American's with Disabilities Act of 1990, 42 U.S.C. § 12201, *et seq.* ("ADA"), and 42 U.S.C. § 1981 ("§ 1981"), alleging discrimination and retaliation on the basis of a disability and her race. Specifically, Plaintiff alleges that she was denied a reasonable accommodation for a skin condition (permission to wear moisture-wicking pants at work) and that she was retaliated against for seeking this reasonable accommodation. She further alleges that she suffered retaliation for complaining about harassment she suffered based on her disability and her race.

Defendants move for summary judgement contending that Plaintiff has not established a prima facie case of discrimination or retaliation, and that they are entitled to judgment as a matter of law. Although Plaintiff opposes the Defendants' motion, she has withdrawn her claims under 42 U.S.C. § 1981 for racial discrimination, and has withdrawn her civil rights claim against defendant Perna. For the reasons discussed below, the Court finds

that Plaintiff has failed to state a claim for disability discrimination, and grants Defendants' motion for summary judgment.

## BACKGROUND

The following facts are taken from the Plaintiff's Complaint, the Defendants' Local Rule 56 (a) Statement of Facts, Plaintiff's Response to Defendant's Statement of Facts, and the Court's review of the entire record. (Docket No. 16).

Plaintiff filed this action on December 1, 2011. Plaintiff was issued a summons for the individual defendant, Daniel Perna, which was delivered by a process server to Rebecca Alcock, "a person of suitable age and discretion...[at the] defendant['s] actual place of business and employment." (Docket No. 5). The summons and complaint were not mailed to Perna. In his Answer, Perna asserted the defense of lack of personal jurisdiction.

Plaintiff is a childcare worker for the Monroe County Children's Center, a detention center for youth. Plaintiff has worked at the Children's Center since 1988. In 1993, she became a senior childcare worker and is a supervisor of the childcare workers. Both black and white individuals are employed at the Children's Center. During the relevant time period, 2011, Daniel Perna was the program coordinator and supervised the childcare supervisors, including Plaintiff.

Plaintiff is a diabetic and suffers from folliculitis in her groin area: a secondary condition to diabetes. To treat the

folliculitis, Plaintiff wears loose-fitting, moisture-wicking pants.

The County adopted a Personal Appearance Policy that prohibits its employees from wearing athletic pants. Prior to October 2010, the Personal Appearance Policy was loosely enforced. Subsequently, in October 2010, a new Personal Appearance Policy was adopted and the County requested that it be enforced. Perna states that after this new policy was adopted, he enforced the policy against all individuals, regardless of color, both black and white, who violated the policy. For example, he required that Gabriel Ryan, a black female childcare worker, remove a hooded sweatshirt. Part of Givens' job was also to enforce the dress code against her subordinates. On one occasion, Perna asked Plaintiff to enforce the policy against Nick Leisenring, an Asian male childcare worker, who was wearing shorts. However, Plaintiff recommended that Leisenring be allowed to continue working because the Children's Center would otherwise be short-staffed if he left.

On February 12, 2011, Perna advised Plaintiff that she was in violation of the dress code for wearing athletic pants to work. He advised Plaintiff to contact the County's ADA Compliance Officer, Julie Allen, to request an accommodation to the dress code, but he told her that she needed to set a good example for her subordinates by following the policy. He asked her whether she could buy larger pants to accommodate her condition. Several days later, Plaintiff states that Perna again approached her about her pants. He told

her she would be sent home if she continued to wear the pants, unless she requested an accommodation.  Plaintiff thereafter requested an accommodation on February 18, 2011, and she was allowed to wear the athletic pants to work pending the review of her request.  On March 15, 2011, Plaintiff was granted the accommodation she requested, which permitted her to wear moisture-wicking pants to work, and the County also agreed to reimburse her $90 for the cost of the pants.

Plaintiff now claims that the pants she was allowed to wear were made out of polyester, and were not moisture-wicking.  It is undisputed, however, that Plaintiff never complained about the pants after she was granted permission to wear them and was reimbursed for their cost.  Moreover, although Plaintiff now claims that the pants were not moisture-wicking, she has provided no evidence to support that claim, and no evidence that pants made out of polyester can not be moisture-wicking.

Julie Allen also asked Plaintiff to send her details of the occasions when she felt that she was harassed for being out of compliance with the policy. Plaintiff sent Julie Allen a detailed list of several interactions with Perna, including the instances he told her she was out of compliance and that she should request an accommodation.  Additionally, Plaintiff complained of an incident in which Perna spoke to another employee over a two-way radio and implied that Plaintiff was disrespectful. And that other employees also heard this conversation over the radio.  Plaintiff also

complained that Perna asked her to remove a sweatshirt that was out of compliance with the dress code in early March 2011.  She also stated that Perna said to her supervisor, "why can't you control Barb like [her previous supervisor] did?". Plaintiff also related an incident in which a computer was misplaced. When Perna spoke to Plaintiff about the computer issue he told her that she was being disrespectful.

Plaintiff's complaints were sent to Labor Relations Manager Thomas Vasey, who followed up with Plaintiff in May, 2011.  He asked her whether her work environment had improved since she was granted the accommodation, and she stated, "things appear to be better."

Later, in June 2011, Plaintiff was prohibited from using the computer because complaints were made that she used the computer excessively.  Additionally, she had an altercation with Perna about a project in the garden.  Perna drew Plaintiff a map of the garden, which she could not understand, and he stated that he had taught ten year olds simpler things.

On June 28, 2011, Plaintiff made a formal complaint of discrimination to the County.  She alleged discrimination and retaliation on the basis of her race, sex and disability.  She stated that Perna was the only person who discriminated or retaliated against her and she detailed the incidents described above in her complaint.

## DISCUSSION

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed.R.Civ.P. 56(a). Once the movant has met this burden, the burden shifts to the nonmovant who must "come forward with evidence to allow a reasonable jury to find in his favor." See Lizardo v. Denny's, Inc., 270 F.3d 94, 101 (2d Cir.2001); Celotex Corp. v. Catrett, 477 U.S. 317, 325-27 (1986). The court must draw all factual inferences, and view the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Celotex Corp., 477 U.S. at 322. However, a nonmovant benefits from such factual inferences "only if there is a 'genuine' dispute as to those facts." See Scott v. Harris 550 U.S. 372 (2007).

I.    Defendant Perna

Plaintiff asserted a cause of action under § 1981 against Defendant Perna.  However, in her memorandum in opposition to Defendants' motion for summary judgment, Plaintiff withdraws this claim.  Accordingly, I dismiss Plaintiff's § 1981 claims against defendant Perna with prejudice.

Page -6-

II.  <u>ADA Accommodation Claim</u>

Plaintiff claims that the County failed to provide her with a reasonable accommodation for her skin condition.  To state a claim for failure to accommodate under the ADA, a plaintiff must establish that she is a person with a disability under the meaning of the ADA, that her employer is covered by the statute and had notice of her disability, she can perform the essential functions of the job at issue with reasonable accommodation, and that the employer has refused to make such accommodations.  <u>McBride v. BIC Consumer Products Mfg. Co.</u>, 583 F.3d 92, 97 (2d Cir. 2009).  The County argues that Plaintiff cannot establish a claim for the denial of a reasonable accommodation because she was provided the accommodation she requested, and the County permitted her to wear moisture-wicking pants, which were purchased by the County.  The defendant points out that less than one month after the Plaintiff made a formal request to wear moisture-wicking pants to work (and submitted a doctor's note supporting her request), the request was granted, and the County also agreed to reimburse Plaintiff up to a maximum of $90 for the cost of the pants. (Docket No. 16-4, pg. 170).  Because Plaintiff's accommodation was granted, she cannot establish a prima facie case for the failure to provide a reasonable accommodation.  <u>See</u> <u>e.g.</u> <u>Lewis v. Erie County Medical Center Corp.</u>, 907 F.Supp. 2d 336, 352 (W.D.N.Y. November 1, 2012)(where plaintiff's requested accommodations were granted, plaintiff failed to state a claim for failure to accommodate).

Plaintiff now claims, however, that the pants she was allowed to wear were polyester, not moisture-wicking, and caused her to suffer another bout of folliculitis. Notably, however, Plaintiff never complained that the pants were not satisfactory after she received permission to wear them, wore them, or was reimbursed for them. Defendants never had notice that the Plaintiff was unhappy with the accommodation that was provided to her. Accordingly, because the defendants never had notice that further accommodation was necessary, Plaintiff is unable to state a claim that the defendants were aware of or refused to accommodate Plaintiff's claimed disability. See McBride, 583 F.3d at 97 (plaintiff required to establish that defendant had notice of plaintiff's need for accomodation).

### III. ADA Retaliation

Plaintiff also alleges that she was subjected to retaliation because she requested an accommodation for her disability. To establish a prima facie case of retaliation under the ADA, Plaintiff must show that: "(1) [s]he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against [her]; and (4) a causal connection exists between the alleged adverse action and the protected activity." Treglia v. Town of Manlius, 313 F .3d 713, 719 (2d Cir.2002). The adverse action must be materially adverse, which, in this context means any action that "could well dissuade a reasonable worker from making or supporting a charge of

discrimination." <u>Burlington Northern & Santa Fe Ry. v. White</u>, 548 U.S. 53, 67-68 (2006). "Actions that are 'trivial harms'—i.e., 'those petty slights or minor annoyances that often take place at work and that all employees experience'—are not materially adverse." <u>Tepperwien v. Energy Nuclear Operations, Inc.</u>, 663 F.3d 556, 568 (2d Cir. 2011)(quoting <u>Burlington</u>, 548 U.S. at 68).  The standard is objective and the court must consider the context in which the actions occurred to determine whether they are materially adverse. <u>Id.</u>

Defendants contend that Plaintiff has not established that she was subjected to an adverse employment action. Plaintiff's allegations consist of Perna singling her out for not complying with the dress code before she requested an accommodation; making negative statements about her to other employees and making negative statements about her that other employees overheard on a radio communication system; requiring that she go home to remove a sweatshirt that did not comply with the dress code; and making a negative comment about her inability to follow his instructions for a gardening project. Plaintiff was not disciplined in any way other than being required to go home to remove her sweatshirt.  Also, at one point, she was denied computer privileges.

<u>A.   Perna's statements about Plaintiff's
non-compliance with the dress code</u>

The record indicates that Perna informed Plaintiff about her pants not complying with the County's dress code in early

February 2011. (Docket. No. 16-4, pg. 232, Plaintiff's discrimination complaint). He instructed her that if she continued to wear sweat pants she would be sent home and he asked her whether she could wear larger pants to accommodate her problem. (Docket No. 16-4, p. 186). He instructed Plaintiff to contact the County's ADA Compliance Office, Julie Allen, regarding the possibility of an accommodation to the dress code, but he stressed that she needed to set an example for other employees. (Docket No. 16-4, p. 186). Plaintiff contacted Julie Allen on February 12, 2011 to request an accommodation, and submitted a formal request with a note from her physician on February 18, 2011. (Docket No. 16-4, pg. 157-164). Plaintiff was later granted the accommodation on March 15, 2011. (Docket. No. 16-4, p. 170.) She expressed her concerns to Ms. Allen and Thomas C. Vasey, the Labor Relations Manager, that Perna had "harassed" her regarding her non-compliance with the dress code prior to requesting her accommodation. (Docket No. 16-4, p. 191). Following the granting of her request for an accommodation she informed Vasey, "things appear to be better." (Docket No. 16-4, p. 191.). The only other time that Plaintiff alleges that she and Perna discussed the dress code is when he informed her she needed to remove a sweatshirt that did not comply with the dress code in March 2011. (Docket No. 16-4, p. 188).

With respect to Perna's comments regarding Plaintiff's non-compliance with the dress code before she applied for an accommodation, the Court finds that these actions cannot constitute

material adverse actions and that they are not causally related to
her protected activity because they occurred before she requested
an accommodation and further because she admitted that after she
was granted the accommodation, Perna did not make comments about
her pants or her condition which initially caused her to request
the accommodation. See McPherson v. City of New York, 2011 WL
4431163, *6 (S.D.N.Y. September 23, 2011)(finding that a
plaintiff's allegation that she was singled out for a violation of
a uniform policy prior to requesting an accommodation destroyed any
inference of causation).  Further, with respect to the instance
where Perna required Plaintiff to remove a sweatshirt that was not
in compliance with the dress code, the Court finds that this
instance was also not causally related to her request for an
accommodation.  Plaintiff's condition and accommodation related to
clothing covering her lower body, which did not require that she
wear a sweatshirt.  The Court finds that requiring Plaintiff to
remove the sweatshirt was, at most, a "minor inconvenience," which
does not amount to a materially adverse employment action.  Id.
Further, the record indicates that Perna enforced the dress code
against another worker wearing a sweatshirt, and therefore
Plaintiff was not treated differently in this regard.

        B. Other Comments and Actions by Perna

        Plaintiff also alleges that she was subjected to retaliation
because Perna made negative statements about her over a radio
communication that could be overheard by other employees.

Specifically, she states that he implied that she was "disrespectful" to him.  Later, she states that he asked her supervisor "why can't you control Barb like Joe Carter (her former supervisor) did?"  (Docket No. 16-4, p. 187-188).  Then, in response to her inability to read a map he drew for a project in the garden he stated "I have taught ten year olds simpler things." (Givens Dep. at p. 112).  In May 2011, Plaintiff was also restricted from using the County's computers because there were complaints that she was using the computer excessively. (Givens Dep. at p. 108.).

The Court finds that none of these actions, either alone or in the aggregate, are materially adverse such that a reasonable employee would be dissuaded from filing a charge of discrimination. See Tepperwien 663 F.3d at 571-2 (negative comments not materially adverse actions)(quoting Burlington, 548 U.S. at 68, "P]ersonality conflicts at work that generate antipathy and snubbing by supervisors and co-workers are not actionable.").  Further, Plaintiff made a discrimination complaint to the County on June 28, 2011, subsequent to these alleged adverse actions having occurred. (Docket 16-4, pg. 219).  While this fact alone is not dispositive, taken in context, the Court finds that it weighs against Plaintiff's allegations that these actions were materially adverse. See Mendez v. Starwood Hotels & Resorts Worldwide, Inc., 746 F.Supp.2d 575, 597 (S.D.N.Y. September 30, 2010).  Therefore, the Court finds that Plaintiff has not established a prima facie case

of retaliation because she has not established that she was subjected to a materially adverse employment action after she requested an accommodation to the dress code policy.

IV. <u>Section 1981 Retaliation</u>

In her memorandum in opposition to Defendant's motion for summary judgment, Plaintiff withdraws her retaliation claim under 42 U.S.C. § 1981. Accordingly I dismiss this cause of action with prejudice.

V. <u>Monell Claims</u>

Although Plaintiff has withdrawn all of her constitutional claims under 42 U.S.C. § 1981, she asserts that she has stated a claim against Monroe County for a deprivation of her constitutional rights pursuant to <u>Monell v. Dep't of Soc. Servs. of City of New York</u>, 436 U.S. 658 (1978). Under <u>Monell</u>, a municipality may be held liable for a constitutional deprivation suffered by a plaintiff where the deprivation arises from a municipal policy or custom. In this case, however, because Plaintiff has withdrawn all of her constitutional claims, there is no alleged constitutional deprivation that could be attributed to the County. Moreover, it is well established that <u>Monell</u> does not create a stand-alone cause of action that may exist in the absence of a claim of a constitutional deprivation by a municipal actor. <u>Alvarado v. Westchester Cnty.</u>, 2014 WL 2217873 *6 (S.D.N.Y. Apr. 24, 2014). Accordingly, I grant defendant's motion to dismiss Plaintiff's claim under <u>Monell</u>.

## CONCLUSION

For the reasons set forth above, the Court finds that Plaintiff has not stated a prima facie case of discrimination or retaliation under the ADA or Section 1981.  Therefore, the Court grants Defendants' motion for summary judgment and Plaintiff's complaint is dismissed with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

> s/ Michael A. Telesca
> MICHAEL A. TELESCA
> United States District Judge

Dated:    Rochester, New York
          September 25, 2014